IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

SUSAN L. BLUE,

                Plaintiff,

  v.

INTERNATIONAL BROTHERHOOD OF
ELECTRICAL WORKERS LOCAL 159,
INTERNATIONAL BROTHERHOOD OF
ELECTRICAL WORKERS SIXTH DISTRICT,
and INTERNATIONAL BROTHERHOOD OF
ELECTRICAL WORKERS,

                Defendants.

OPINION and ORDER

24-cv-397-jdp

---

Plaintiff Susan L. Blue was employed by defendant International Brotherhood of Electrical Workers Local 159 as its business manager. She was seeking reelection to that position. This lawsuit arises from events that occurred during and after her reelection campaign.

Blue contends that defendants Local 159 and the International Brotherhood of Electrical Workers retaliated against her because of her successful 2009 lawsuit against Local 159. She brings claims under Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981. Blue seeks compensatory damages for lost wages and benefits, mental and emotional distress, damage to her reputation, and lost future earning capacity. Dkt. 34, ¶ 601. Blue also seeks punitive damages. *Id.*, ¶ 602. She also asks the court to reinstate her into her position as business manager of Local 159. *Id.*, ¶ 603.

Local 159 and IBEW move to dismiss. Dkt. 40 and Dkt. 42. The court will deny their motions in almost all respects and allow Blue to proceed with her Title VII and § 1981 claims.

Blue's complaint plausibly explains what led her to believe that she was treated adversely because of her prior lawsuit, which is sufficient at the pleading stage.[1]

BACKGROUND

The allegations in Blue's complaint are extensive and detailed, but they fall into three main groups.

First, Blue alleges that three union members made false and disparaging comments to other union members about her and her prior lawsuit against Local 159. For example, they said that Blue "had destroyed her union for selfish gain" and "did too much for women and people of color in the union." Dkt. 34, ¶¶ 411, 414.

Second, Blue alleges that union officials failed to properly respond to her concerns about Local 159's business manager election. For example, Blue spoke with an IBEW Sixth District representative about the false and disparaging comments and their connection to her prior lawsuit. But the representative did not conduct a legitimate investigation into her concerns.

Third, Blue alleges that Local 159's newly elected business manager has sought to defame her. For example, the business manager has held several meetings with Local 159's business agents to devise ways to discredit Blue and permanently damage her reputation with union members.

The court will discuss additional allegations as they become relevant to the analysis.

---

[1] The parties have cleared up two preliminary matters. First, the International Brotherhood of Electrical Workers Sixth District is not an independent legal entity—it is an administrative arm of IBEW—so it is dismissed as a defendant. *See* Dkt. 43, at 4 n.1; Dkt. 45, at 6 n.1. Second, Blue's breach of the duty of fair representation claim is dismissed by agreement of the parties. *See* Dkt. 44 at 15; Dkt. 45, at 22.

ANALYSIS

Local 159 and IBEW move to dismiss Blue's complaint, contending that it fails to state claims for relief under Title VII and § 1981. Dkt. 40 and Dkt. 42. IBEW also contends that this court lacks subject-matter jurisdiction over Blue's lawsuit. *See* Dkt. 43, at 9–15.

The court starts with IBEW's jurisdictional concern. Then, the court explains why Blue's complaint sufficiently alleges that Local 159 and IBEW retaliated against her.

**A. This court has subject-matter jurisdiction**

IBEW contends that the court cannot consider Blue's complaint because it is "fundamentally a dispute over the validity of the Local 159 election." Dkt. 43, at 13. IBEW points to Title IV of the Labor-Management Reporting and Disclosure Act, which governs how unions elect their officers. *See Loc. No. 82, Furniture & Piano Moving, Furniture Store Drivers, Helpers, Warehousemen & Packers v. Crowley*, 467 U.S. 526, 539 (1984); 29 U.S.C. § 481. Title IV provides the "exclusive" remedy for challenging an already conducted union election: the Secretary of Labor must bring a lawsuit to set aside the election. 29 U.S.C. § 483; *see id.*, § 482.

IBEW argues that, given Title IV's exclusivity provision, this court lacks subject-matter jurisdiction over Blue's case. *See* Dkt. 43, at 9–15. IBEW's framing of this as a jurisdictional issue finds support in the Seventh Circuit's decision in *Driscoll v. International Union of Operating Engineers*, 484 F.2d 682 (7th Cir. 1973). In *Driscoll,* the Seventh Circuit instructed courts to analyze the substance and basic nature of a complaint to determine whether jurisdiction exists. *Driscoll,* 484 F.2d at 686 n.9. If the basic thrust of the complaint seeks to vindicate Title IV rights, the district court is without jurisdiction. *See id.* at 686–88.

But *Driscoll's* jurisdictional approach is inconsistent with the reasoning of a later decision, *McCready v. White*, 417 F.3d 700 (7th Cir. 2005). There, the Seventh Circuit clarified

3

the difference between subject-matter jurisdiction and the existence of a private right of action. *See McCready*, 417 F.3d at 702–03. In *McCready*, the court explained that the court had jurisdiction because McCready's claim "rest[ed] entirely on federal law." *Id.* at 702 (citing 28 U.S.C. § 1331). The problem was that McCready did not have authority to bring a private suit. *See id.* at 703–04. That's defendant's real substantive argument here—union members have no private right of action to set aside a union election. *See Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 531 (1972); 29 U.S.C. § 482(b).

The problem with defendants' argument is that Title VII provides a remedy for discrimination or retaliation claims that do not directly challenge the validity of a union election. *See Crowley*, 467 U.S. at 541 n.16. A pair of cases illustrates the point.

Consider first *Ross v. International Brotherhood of Electrical Workers*, 513 F.2d 840 (9th Cir. 1975). Ross was the incumbent financial secretary and business manager of Local 640 of the IBEW; he sought reelection to that position. *Ross*, 513 F.2d at 841. Before the election, Local 640's president filed internal union charges against Ross with the vice-president of IBEW. *Id.* Ross alleged that the vice-president purposefully delayed a trial on these charges until voting commenced to adversely affect Ross's reelection chances. *Id.* Ross brought a tort claim against the vice-president, contending that he exceeded his authority, sought to injure Ross and deprive him of his position, and took actions to defame Ross in his candidacy. *See id.* at 842. The district court concluded it lacked jurisdiction to consider Ross's tort claim because of Title IV's exclusivity provision. *See id.* at 841.

The Ninth Circuit reversed, holding that Title IV did not deprive the district court of jurisdiction to consider Ross's tort claim. *Id.* at 843. The court reasoned that Ross's tort claim "involve[d] different considerations, different harms and different remedies" than claims under

4

Title IV. *Id.* at 842. Specifically, Ross did not challenge the election or "seek any relief which would interfere with operation of the Local pursuant to the election." *Id.* at 842–43. The court concluded that there was "no public purpose to be served by prohibiting all civil actions . . . where challenge to the election is not involved and is not the result." *Id.* at 843.

Second, contrast this result with *Tucker v. Tobacco Workers International Union, AFL-CIO, Local 183*, 488 F.2d 76 (4th Cir. 1973) (per curiam). In that case, Tucker served as the elected representative on the local's Shop Committee. *Tucker*, 488 F.2d at 77. The Shop Committee was comprised of eleven members; three of these members were required to be elected from areas of workers which were predominantly black, and Tucker represented Area 3. *Id.* In 1971, Tucker lost reelection to Vaughn, a white person. *Id.* Vaughn was elected despite objections to his eligibility, namely that he was not an Area 3 employee. *See id.* at 77–78. The plaintiffs sued, contending that the actions resulted in discrimination against them based on race and color in violation of Title VII and § 1981. *See id.* at 78. They argued that their claims were not subject to Title IV's exclusivity provision because Title IV does not apply to "a prima facie case of racially discriminatory union election practices." *Id.* The district court dismissed their action, concluding that "it was a dispute 'over internal union elections' for which an *exclusive* remedy is provided under Title IV." *Id.*

The Fourth Circuit affirmed, holding that the facts of the case were insufficient to invoke an additional remedy under Title VII or § 1981. *See id.* at 79. The court observed that "there may well be cases of racial discrimination in the conduct of internal union affairs that come within the ambit of [Title VII and § 1981]." *Id.* at 78 (citing 42 U.S.C. § 2000e-2(c)). But *Tucker* was not one of those cases. *Id.* Because the plaintiffs alleged that they were entitled to have someone represent Area 3 that was an employee of Area 3, their case was "properly

5

characterized . . . as a dispute 'over internal union elections' for which [Title IV] provides the appropriate remedy." *Id.* at 78–79.

Turning back to this case, Blue does not challenge Local 159's election and she does not ask the court to set it aside. Instead, she alleges that Local 159 and IBEW retaliated against her, and she seeks relief under Title VII and § 1981 for that retaliation.

As in *Ross*, Blue's complaint involves different harms and different remedies than Title IV. *See Ross*, 513 F.2d at 842. The court may hear her Title VII and § 1981 claims even though they are related to Local 159's business manager election. However, Title IV would prevent the court from undoing the results of the election by reinstating Blue as business manager of Local 159, even though reinstatement may sometimes be an available remedy under Title VII.

### B.  Blue's complaint states claims for relief under Title VII and § 1981

Local 159 and IBEW contend that Blue's complaint fails to state claims for relief under Title VII and § 1981. *See* Dkt. 41, at 6–15; Dkt. 43, at 15–23.

The court will address Blue's Title VII and § 1981 retaliation claims together because the analysis is the same under both statutes. *Abebe v. Health & Hosp. Corp. of Marion Cnty.*, 35 F.4th 601, 606 n.1 (7th Cir. 2022). To state a retaliation claim under either statute, Blue must allege that she engaged in a statutorily protected activity and suffered an adverse action as a result. *See Alamo v. Bliss*, 864 F.3d 541, 555 (7th Cir. 2017).

Local 159 and IBEW do not dispute that Blue engaged in a statutorily protected activity when she sued Local 159 for retaliation in 2009. *See* Dkt. 41, at 7; Dkt. 43, at 22. So all Blue needs to do is plausibly explain what led her to believe that she was treated adversely because

of her prior lawsuit against Local 159. *See Dorsey v. Williams*, No. 21-1858, 2022 WL 337192, at *1 (7th Cir. Feb. 4, 2022).

If Blue's complaint provided no explanation for the 13-year gap between her prior lawsuit against Local 159 and her adverse treatment, it would not be reasonable to infer that Local 159 and IBEW retaliated against her. *See Carmody v. Bd. of Trs. of Univ. of Ill.*, 747 F.3d 470, 480 (7th Cir. 2014). But Blue's complaint is not so bare bones that her retaliation claims are implausible. *See Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 828–29 (7th Cir. 2014).

Blue's complaint contains lots of factual details indicating that her 2009 lawsuit was on everyone's mind during and after her 2022 reelection campaign, and these details suggest that Blue was treated adversely because of her lawsuit. The court provides three examples drawn from Blue's complaint.

First, Blue alleges that union members made false and disparaging statements about her and her prior lawsuit. One of these union members, Joshua Stern, posted about Blue on a Facebook page used by Local 159 members. Stern's post said that Blue's opponent in the business manager race, was "only involved in [Blue's] previous lawsuit 'by proxy' and that Ms. Blue was trying to smear [his] character." Dkt. 34, ¶ 410. It also said that Blue had "sued multiple unions, that the majority of unions in Madison would not work with Ms. Blue, and that Ms. Blue had destroyed her union for selfish gain." *Id.*, ¶ 411.

Second, Blue alleges that union officials failed to properly investigate or respond to her concerns about these disparaging comments. Blue spoke with an election judge about Stern's Facebook post. The election judge was also an administrator of the Facebook page used by Local 159 members. Blue told the election judge that Stern's post was not true. The election judge said that he would immediately remove Stern's post. But the post remained accessible

until after the election, allowing it to be seen and shared by almost 400 followers of the Facebook page.

Third, Blue alleges that IBEW permitted Local 159's newly elected business manager to defame her. In December 2022, the business manager filed internal union charges against Blue, accusing her of theft and destruction of union property. Blue objected that the charges were false and untimely under IBEW's constitution. But IBEW allowed Blue to be investigated and did not respond to Blue's objections. The investigation into Blue went on for about six months before the business manager dropped the internal charges in June 2023.

To sum up, Blue's allegations indicate that union members knew about her prior lawsuit against Local 159 and made false and disparaging comments because of it. Her allegations also suggest that union officials failed to properly investigate or respond to Blue's concerns after she informed them of her prior lawsuit. As a result, her complaint provides plausible grounds to infer that Local 159 and IBEW retaliated against her because of her prior lawsuit.

Local 159 and IBEW resist this conclusion. They contend that Blue's complaint fails to allege facts showing that she suffered any adverse action. *See* Dkt. 41, at 9–13; Dkt. 43, at 21. An adverse action is one that "would dissuade a reasonable worker from participating in protected activity." *Huri v. Off. of the Chief Judge of the Cir. Ct. of Cook Cnty.*, 804 F.3d 826, 833 (7th Cir. 2015). In the retaliation context, an adverse action does not necessarily need to "affect[] the terms and conditions of employment." *Poullard v. McDonald*, 829 F.3d 844, 856 (7th Cir. 2016). But actions that cause trivial harms—think "petty slights, minor annoyances, and simple lack of good manners"—are not materially adverse. *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006).

Blue says she was the subject of a campaign of disparaging statements, false accusations, baseless investigations, and efforts to discredit her and damage her reputation. *See* Dkt. 34. These actions are not trivial; they suggest that individuals throughout the union wanted Blue to lose Local 159's business manager election and used their power to help ensure she did. These actions would dissuade a reasonable worker from engaging in a protected activity.

Local 159 and IBEW also contend that Blue failed to allege facts showing that she was employed by either of them. *See* Dkt. 41, at 7–9; Dkt. 43, at 17–18. But Blue identifies Local 159 as her employer, Dkt. 34, ¶ 101, and she alleges that she "was employed as the elected business manager of Local 159." *Id.*, ¶ 403. Regardless, retaliation under Title VII applies to employers *and* labor organizations. *See* 42 U.S.C. § 2000e-3(a); *Green v. Am. Fed'n of Tchrs./Ill. Fed'n of Tchrs. Loc. 604*, 740 F.3d 1104, 1105 (7th Cir. 2014).

The remaining arguments by Local 159 and IBEW are not properly addressed on a motion to dismiss. Local 159 and IBEW contend that Blue's Title VII claims are time-barred. *See* Dkt. 41, at 6; Dkt. 43, at 16 n.4. IBEW also contends that Blue did not exhaust her administrative remedies because she failed to name IBEW in her EEOC charge and her complaint exceeds her EEOC charge's scope. *See* Dkt. 43, at 16–17; Dkt. 46, 10–11. These arguments are affirmative defenses. *See Mosely v. Bd. of Educ. of City of Chicago*, 434 F.3d 527, 533 (7th Cir. 2006) (exhaustion); *DeTata v. Rollprint Packaging Prods., Inc.*, 632 F.3d 962, 970 (7th Cir. 2011) (timeliness).

It is generally improper for courts to dismiss complaints because of affirmative defenses. *See Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012). There is an exception: courts may dismiss a complaint when its allegations "set forth everything necessary to satisfy the affirmative defense, such as when a complaint plainly reveals that an action is

9

untimely under the governing statute of limitations." *United States v. Lewis*, 411 F.3d 838, 842 (7th Cir. 2005).

Blue's complaint contains no allegations satisfying these affirmative defenses. She does not indicate when she received her right-to-sue letter from the EEOC, and she does not allege that she named only Local 159 in her EEOC charge. *See* Dkt. 34. As a result, the court will not address Local 159 and IBEW's affirmative defenses at the motion to dismiss stage.

## ORDER

IT IS ORDERED that:

1. Defendant International Brotherhood of Electrical Workers Sixth District is dismissed.

2. Defendants International Brotherhood of Electrical Workers Local 159 and International Brotherhood of Electrical Workers's motions to dismiss, Dkt. 40 and Dkt. 42, are GRANTED in part and DENIED in part. The motions are granted with respect to plaintiff Susan L. Blue's breach of the duty of fair representation claims. The motions are denied in all other respects.

Entered October 29, 2025.

BY THE COURT:

/s/
_____
JAMES D. PETERSON
District Judge