IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

SUSAN L. BLUE,

Plaintiff,

v.

INTERNATIONAL BROTHERHOOD OF
ELECTRICAL WORKERS LOCAL 159,

Defendant.

OPINION and ORDER

24-cv-397-jdp

---

Defendant International Brotherhood of Electrical Workers Local 159 employed plaintiff Susan L. Blue as its business manager. In 2022, Blue sought reelection to that position. Blue alleges that Local 159 retaliated against her during and after her reelection campaign because of her 2009 lawsuit against Local 159. Blue brings claims against Local 159 under 42 U.S.C. § 1981, which prohibits retaliation for opposing race discrimination.[1] Local 159 moves for summary judgment, and the court will grant the motion. The undisputed facts show that Local 159 didn't take materially adverse actions against Blue, so her retaliation claims fail.

BACKGROUND

The court draws the following facts from the parties' proposed findings of facts. These facts are undisputed.

---

[1] Blue also brought claims under Title VII of the Civil Rights Act of 1964. Dkt. 34, at 11. But in her opposition to Local 159's motion for summary judgment, Blue states that she does not oppose dismissal of those claims. Dkt. 69, at 4. The court will grant as unopposed Local 159's motion for summary judgment on Blue's Title VII claims.

Prior to serving as Local 159's business manager, Blue did clerical work for Local 159 for almost forty years. In 2007, non-party Alexander Phillips, a black man, sued Local 159, alleging that its business manager at the time discriminated against him by preventing him from registering for referrals for job placements. Blue testified in support of Phillips's lawsuit. In 2009, Blue sued Local 159, alleging that the union retaliated against her for supporting Phillips's lawsuit. A jury found in Blue's favor.

In 2019, Blue was elected business manager of Local 159. She ran for reelection to that position in 2022. Blue had two opponents in the race, one of whom was Michael Killian. Blue and Killian received the most votes for the business manager position, but neither of them received enough votes to win. Local 159 held a run-off election, and Killian was ultimately elected as business manager.

The pertinent events happened during the run-up to the run-off election and during its aftermath. Three events are at issue: (1) Local 159's president, Joshua Stern, made a Facebook post referring to Blue's prior lawsuit, and Local 159's election judge, Thomas Lemens, didn't take down Stern's post before the run-off election; (2) after the run-off election, Local 159's newly elected business manager, Michael Killian, filed internal union charges against Blue; and (3) Killian pursued an insurance claim against Blue.[2]

The court will discuss additional facts as they become relevant to the analysis.

---

[2] Blue also proposes the following fact about other alleged adverse acts: "After the 2022 election, Mr. Killian took a number of steps to discredit Blue, and to permanently damage her good reputation with the members." Dkt. 71, ¶ 113 (citing Dkt. 65, ¶ 86). Blue cites her declaration in support of the proposed fact, but her declaration isn't any more specific. The court will not accept Blue's proposed fact as true because it is a conclusory statement that isn't grounded in specific facts, as required at summary judgment. Fed. R. Civ. P. 56(c); *Ervins v. Sun Prairie Area Sch. Dist.*, No. 21-cv-366-jdp, 609 F. Supp. 3d. 709, 720 (W.D. Wis. 2022).

ANALYSIS

Blue contends that Local 159 retaliated against her in violation of 42 U.S.C. § 1981. An employer violates § 1981 when it takes a materially adverse action against an employee because of her protected activity. *Baines v. Walgreen Co.*, 863 F.3d 656, 661 (7th Cir. 2017). There is no dispute that Blue's prior lawsuit against Local 159 is protected activity.

Local 159 moves for summary judgment, Dkt. 53, contending that it did not take any materially adverse action against Blue and that it did not take any action against Blue because of her prior lawsuit against the union, Dkt. 54, at 8. The court will grant Local 159's summary judgment motion only if it shows that there is no genuine dispute as to any material fact and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The materiality issue is dispositive. The essential question is whether a reasonable jury could find that Local 159 took a materially adverse action against Blue after drawing all reasonable inferences in her favor. *See Johnson v. Accenture LLP*, 142 F.4th 536, 542 (7th Cir. 2025).

For an action to be materially adverse under § 1981, it must be "harmful to the point that [it] could well dissuade a reasonable worker from making or supporting a charge of discrimination." *Shott v. Katz*, 829 F.3d 494, 497 (7th Cir. 2016) (citation omitted); *see Est. of Harris v. City of Milwaukee*, 141 F.4th 858, 869 (7th Cir. 2025) (harm must be "significant"). Trivial harms such as petty slights and minor annoyances aren't materially adverse actions. *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006). Whether an action is materially adverse often turns on the context in which it occurred. *Lesiv v. Ill. Cent. R.R. Co.*, 39 F.4th 903, 912 (7th Cir. 2022).

Blue contends that Local 159 took three materially adverse actions against her. Blue asks the court to consider the actions collectively, Dkt. 69, at 28, but in the retaliation-claim

context, courts must consider each alleged retaliatory act to determine whether it is sufficiently adverse. *Lewis v. Wilkie*, 909 F.3d 858, 868 n.3 (7th Cir. 2018); *see Boss v. Castro*, 816 F.3d 910, 918 (7th Cir. 2016) ("Insofar as Boss argues for a 'totality of the circumstances' view, the caselaw limits that approach to his hostile work environment claims."). The court will consider the three challenged actions in turn.

## A. Facebook post

Before the run-off election took place, Blue sent a mailer to members of Local 159. In the mailer, Blue discussed her prior lawsuit against the union. Stern posted a response to Blue's mailer on the "Our IBEW 159" Facebook page, which is used by union members to discuss topics related to the union. It is undisputed that the "Our IBEW 159" Facebook page wasn't created by Local 159 and that Local 159 doesn't administer the page.

As relevant here, Stern's post included the following statements about Blue:

> It is hard to see how suing multiple unions (including another action [Blue] took against the Building Trades Association) is a great way to say you can work well within a union structure. Some may have noticed we seem to have less to do with other unions and union groups within the Madison area. A major reason for this is that most other locals in Madison feel that our business manager [Blue] going nonunion and eliminating representation for her coworkers to work out a better deal for herself is the opposite of unionism. Unfortunately, IBEW 159 is seen as part of that antiunion action.

Dkt. 71, ¶ 42 (emphasis omitted).

Stern's Facebook post was not a materially adverse action. Although it is reasonable to infer that Stern was referring to Blue's prior lawsuit against Local 159 when he wrote that she sued multiple unions, Stern was essentially calling Blue a troublemaker who wouldn't work well within a union structure. The court of appeals has held that "being called a trouble maker, a cry baby, or a spoiled child [wouldn't] dissuade a reasonable person from complaining of

discrimination." *Brown v. Advoc. S. Suburban Hosp.*, 700 F.3d 1101, 1108 (7th Cir. 2012). Because Stern's post wasn't materially adverse, the court need not consider whether Lemens failure to take down the post before the run-off election was itself a materially adverse action.

## B. Internal union charges

After Killian was elected as Local 159's business manager, Local 159's Benefits Fund Office informed him that there were "concerning amounts of money missing from Local 159's finances," stemming from vacation payouts to Blue and others, which occurred while Blue was still the business manager. Dkt. 72, ¶ 96. Killian reviewed Local 159's financial records from Blue's tenure; he also had an accountant review the records. Killian filed internal union charges against Blue, and the charges were read aloud at a union membership meeting. Killian's internal charges didn't lead to a hearing and didn't result in any disciplinary action against Blue.

Killian's internal union charges against Blue were not materially adverse actions. Federal law protects an employee only from retaliation that produces an injury. *Stephens v. Erickson*, 569 F.3d 779, 790 (7th Cir. 2009). The mere possibility of discipline cannot support a retaliation claim. *See Poullard v. McDonald*, 829 F.3d 844, 856–57 (7th Cir. 2016). Stated another way, when the threat of future discipline results in no injury or harm greater than stress and worry, there is no materially adverse action. *See Lewis*, 909 F.3d at 870.

## C. Insurance claim

In June 2023, Killian dropped his charges against Blue and instead filed a loss of funds claim with the union's insurance carrier against Blue for the vacation payouts. It is undisputed that "Blue has not been found liable for any amount of money because of the loss of funds claim" and that "Local 159 did not cause Blue to be fined any amounts of money by any third-persons, including [the insurance carrier]." Dkt. 72, ¶¶ 132, 145. The court takes this to

mean that Blue isn't on the hook for the missing funds. Blue hasn't provided evidence of any injury or harm resulting from the insurance claim, so it wasn't a materially adverse action.

## CONCLUSION

It's clear that some Local 159 members harbor resentment towards Blue for her previous lawsuit against the union. But merely holding a grudge and complaining are not materially adverse actions. None of the challenged actions carried consequences serious enough to dissuade a reasonable worker from making or supporting a charge of discrimination, so Blue's retaliation claims fail.

## ORDER

IT IS ORDERED that:

1. Defendant International Brotherhood of Electrical Workers Local 159's motion for summary judgment, Dkt. 53, is GRANTED.

2. The clerk of court is directed to enter judgment accordingly and close the case.

Entered May 12, 2026.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge

6